**PRODUCERS CHEMICAL COMPANY,**
**Appellant,**

**v.**

**Billy Allen STAMPS and Lillian Burnett et al., Appellees.**

**No. 7359.**

Court of Civil Appeals of Texas.

Amarillo.

June 1, 1964.

Rehearing Denied June 29, 1964.

See also, Tex.Civ.App., 346 S.W.2d 165.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellant.

Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, J. D. Crow, Canadian, for appellees.

NORTHCUTT, Justice.

This an appeal from a judgment based upon a jury verdict in favor of Billy Allen Stamps and Lillian Burnett, et al, against Producers Chemical Company. Billy Allen Stamps recovered judgment for $56,918.50. A. H. Burnett had originally filed suit against Producers Chemical Company but died before the trial of his case. His death was not caused from any matters involved in this suit. Lillian Burnett, Louise Motley

and husband Howard Motley, Marie Stone and husband Floyd Stone, and J. D. Crowe, Administrator of the Estate of A. H. Burnett, Deceased, were substituted parties for A. H. Burnett's claim and recovered judgment for $19,895.20. It will be noticed that the jury found Stamps' damages to be $61,521, but Tri-State Insurance Company had paid Stamps $4,602.50 under workman's compensation and was entitled to reimbursement for that amount from the judgment. The same was true as to the claim of Burnett. The jury had found Burnett's damages to be $25,195.20 and that Tri-State Insurance Company was due $5,300 of that amount. Since the Tri-State Insurance Company was granted judgment for the sums above mentioned and must rely upon the rights of Stamps and Burnett to recover, it will not be considered further in this appeal.

Originally, Stamps and Burnett had filed separate suits against Producers Chemical Company for damages for personal injuries suffered allegedly as a result of Producers Chemical Company's negligence, but for convenience the two suits were consolidated for trial and also for this appeal. Producers will hereafter be referred to as appellant and the parties interested in the Burnett judgment and Stamps as appellees.

The case was submitted to a jury upon special issues. Under Special Issue No. 1 the jury found that Producers supplied a compressor which was defective in that it allowed lubricating oil to enter the outlet line; that the supplying of such compressor was negligence and a proximate cause of the explosion. The evidence was uncontroverted that appellant's compressor was a Model XOB air compressor made by Ingersoll-Rand and designed to compress air. There is testimony that appellant did not hold itself out as air drilling engineers, but there is evidence that appellant had used the air compressor for the purpose which it was designed to be used; that is, the compression of air. Mr. McDonald, appellant's air compressor operator, testified that it was an

air compressor, that he had unloaded holes with it before and had operated it off and on for nine years. The special issue did not inquire solely of McDonald, appellant's operator. It inquired whether appellant was negligent in supplying a compressor which was defective in that it allowed lubricating oil to enter into the outlet lines. The jury found appellant supplied a compressor which was defective in that it allowed lubricating oils to enter the outlet line; that same was negligent and a proximate cause of the explosion; that appellant acting by and through its agent, servants and employees operated its compressor when the same was leaking lubricating oil through its pistons into the outlet line; that the same was negligence and a proximate cause of the explosion and appellant acting through its agents, servants and employees operated its compressor when the same had no device or devices for cooling the compressed air as it entered the outlet line; that the same was negligence and a proximate cause of the explosion. Judgment was granted upon the verdict in favor of the plaintiffs, appellees here, for the amounts as found by the jury. From that judgment appellant perfected this appeal.

In appellant's first group of points, appeal is based upon the theory that there was no evidence to sustain the jury finding that appellant supplied a compressor that was defective in that it allowed lubricating oil to enter the outlet line; no evidence to sustain the jury finding that appellant was negligent in supplying such compressor; no evidence to sustain such finding of proximate cause and the evidence was insufficient to sustain the jury's findings as to each of the questions.

E. S. McDonald, appellant's field representative, was in charge of the compressor and delivered it to the well-site at the instructions of appellant. The compressor was attached by their discharge line to the well. There was a Manzell Oiler on the compressor to oil the valves. The compressor was around thirty years old. There

was no pop-off valve on the compressor. A pop-off valve is for the purpose of preventing the pressure from going too high and is a safety device. There was no cooling attachment to cool the air that went from the outlet line that was going to the well. A cooling attachment was to prevent an excessive amount of temperature getting in the air that was going to the rig floor. Mr. McDonald gave all the above testimony and further testified that if you get air at an excessive heat where there is oil or hydrocarbon present, you would have an explosion and he knew that at the time of the explosion. McDonald knew the oil he was putting into the Manzell Oiler was leaking through the cylinder heads and going into the outlet line as there was no other place for the oil to go.

Mr. Watkins, president of appellant, had a college degree in geology and testified he knew what would happen when you compress air with respect to its temperature and knew the temperature increased. He further testified that if you compress air in a container where there was oil at some pressure there would be an explosion and if the temperature is raised high enough you are going to have an explosion. He knew that fact on the day of the accident and assumed that Mr. McDonald knew the same things as related by Mr. Watkins. There is other evidence favorable to the findings of the jury on these issues. Appellant's first four points deal with the no evidence and insufficient evidence to sustain the findings of the jury. If there is any evidence of probative force to support the findings of the jury, such findings are conclusive and binding on both the trial court and this court unless the evidence as a matter of law requires a conclusion contrary to the verdict. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 and cases there cited. We are of the opinion there was sufficient evidence to sustain the jury finding that the compressor was defective in that it allowed for lubricating oil to enter the outlet line; that that was negligence and was a proximate cause of the accident.

Appellant's first four points of error are overruled.

Appellant's points five, six and seven complain of the submission of special issue 1-a since appellant might possibly be liable as a supplier of a defective chattel as a theory of recovery separate and distinct from the theory that appellant was negligent in the operation of the compressor. The appellees pleaded the compressor was defective in that it allowed lubricating oil to enter the outlet line. It is undisputed that the compressor leaked oil which was going into the outlet line as that was the only place the oil could go. The jury then only had to find, was that a defective compressor? If the compressor had been in such condition that no oil was leaking, and the explosion was caused by the hot air coming in contact with the oil, there would not have been an explosion. As to appellant's contentions that said issues 1a, b, and c were wrong because there was omitted from said issue the inquiries constituting the necessary pre-requisites to liability as the supplier of a defective chattel, particularly that appellant knew that it was supplying a compressor for use under circumstances where its compressor would be fed by air rather than gas, we are unable to understand this contention because there is no question but that the compressor was to be fed air, and was known by appellant's agents, and no showing that gas was ever to be used. See Producers Chemical Company v. McKay, 366 S.W.2d 220. Many other points discussed in that case are applicable herein. Appellant's points of error five, six and seven are overruled.

Appellant's points of error eight through fifteen concern the submission of special issues four and six contending there was no evidence and insufficient evidence to sustain such findings. In issue four the jury found that appellant, acting through its agent, servants and employees, operated its compressor when the same was leaking lubricating oil through its pistons into the outlet line; same was negligence and a proximate cause of the explosion. In issue six the jury found the appellant acting through its agents, servants and employees operated its compressor when the same had no device for cooling the compressed air as it entered the outlet line; same was negligence and a proximate cause of the explosion. It is appellant's contention as to issues four and six that the evidence did not make a fact issue for the jury's determination with respect to negligence on the part of appellant in any particular pleaded by appellees; that the evidence did not make a fact issue for jury determination with respect to causation and that the evidence did not make a fact issue for determination with respect to foreseeableness.

We are of the opinion, and so hold, the pleadings and evidence show the appellees presented their case upon the theory that appellant furnished through its servants, agents and employees a defective compressor pumping oil to be used for appellant's own business purposes and also the negligence of its employees in the manner in which they operated the compressor supplied for its own business purposes. From the evidence introduced, McDonald, the appellant's employee, had full control of the manner in which the compressor was operated in performing the services necessary to accomplish the obligation for which the compressor was hired. We have given some of the evidence above as to the facts here involved but here tender additional evidence. Appellant's agent McDonald already knew that the compressor was leaking oil; yet, he did not tell Sears or his employer of this fact; knew that it was an air compressor; knew that an air drilling operation was being employed and that appellant's compressor had to be force fed by the small compressor; was requested to tie in between the small compressor and the rig floor agreeing with Mr. Sears that this method was satisfactory; on two separate occasions the compressor failed to build up any pressure. After failure twice McDonald then added a pint of oil to the Manzell Oiler knowing at that time an entire pint of

oil had already gone through the cylinder head into the outlet line towards the rig floor; told no one of this but started up a third time building up a steady pressure between 1,025–1,050 pounds in several minutes; knew at the time that when air is compressed the temperature rises; that the type of oil going through the Manzell Oiler was a hydrocarbon type and that when air is compressed to an excessive heat with hydrocarbon present in an enclosure from which it cannot escape, an explosion occurs and knew all of this on the day of the accident. He further knew that the air compressor did not have a device for cooling the compressed air as it entered the outlet line; that such an apparatus was a safety device for lowering the temperature and thus eliminating the ingredient of an explosion. We overrule appellant's points of error eight through fifteen.

■■ Appellant's points sixteen through twenty-one deal with the question of loaned employee principle. Appellant states, "The common thread which runs through these points is the loaned employee principle." The main point here raised under appellant's assignments of error sixteen through twenty-one seems to be the refusal by the court to admit in evidence appellant's exhibits one, three and four and further because the court refused to give the appellant's requested issue as to whether McDonald subjected himself and appellant's compressor and employees to the control of Canadian River Drilling Company with respect both to the work to be done and the manner in which it was to be done. We are unable to find any evidence in this record to justify any holding that Canadian River Drilling Company had any right of control of the compressor or its workings. McDonald had the full control of the compressor and so testified. We think these points have been clearly determined in Producers Chemical Company v. McKay, 366 S.W.2d 220 (Sup. Ct.) where the court stated:

"Whether general employees of one employer have, in a given situation, be-

come special or borrowed employees of another employer is often a difficult question, particularly when employees are furnished with machinery by their general employer to accomplish part of a project or contract undertaken by another. Solution of the question rests in right of control of the manner in which the employees perform the services necessary to accomplishment of their ultimate obligation. If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees. If the employees remain under control of their general employer in the manner of performing their services, they remain employees of the general employer and he is liable for the consequences of their negligence. Restatement of the Law of Agency, Vol. 1, § 227; 35 Am. Jur., Master and Servant, 970, § 541; 57 C.J.S. Master and Servant § 566, pp. 284–291. As the Supreme Court of the United States put it in The Standard Oil Co. v. Anderson, 212 U.S. 215, 221–222, 29 S.Ct. 252, 254, 53 L.Ed. 480:"

We think the record in this case clearly involves the principle decided in the McKay case. Appellant's points sixteen through twenty-one are overruled.

■ Under appellant's twenty-second point of error it is contended the court erred in not submitting appellant's requested special issue number 11 as to sole proximate cause. The court submitted the issue of sole proximate cause in such manner as to cover any issue as requested and was not required under Rule 279 to submit other and various other phases or different shades of the same issue. Under this record, we are unable to see where there is anything to justify the submission of an issue as to the acts of Sears (manager of Canadian River Drilling Company) or Well Completions, Inc. or the two in combination being the sole proximate cause. Schuhmacher Co. v.

Holcomb, 142 Tex. 332, 177 S.W.2d 951. Appellant's point of error twenty-two is overruled.

■ Appellant's twenty-third point of error contends the court erred in refusing its requested issue seven whereby it sought submission of the sole proximate cause issue as pleaded by it. Requested issue seven asked if from a preponderance of the evidence appellant's compressor was designed for use in air drilling. It seems to be the theory of appellant that the compressor was designed to use gas and not air. Douglas testified the compressor was a type XOB air compressor. The fact that it might have been different if gas had been used instead of air makes no difference under this record because the entire record shows that it was furnished for and knew it was using air and not gas. McDonald, the appellant's agent, went with the compressor to do the work it was doing at the time of the explosion and knew it was using air. Appellant's point of error twenty-three is overruled.

■ What we have heretofore stated we think disposes of appellant's points of error twenty-four and twenty-five. Under point of error twenty-four the appellant is contending the court erred in not granting its requested issue asking if it was the negligence of either Canadian River Drilling Company, Well Completions, Inc. or the two in combination if the jury found in answer to issue four and six that the appellant had operated its compressor when the same was leaking oil through its pistons into the outlet lant operated the compressor when the same had no device for cooling the compressed air as it entered the outlet line. Issue four submitted by the court asked if appellant operated its compressor when the same was leaking through its pistons into the outlet line and under six if appellant operated a compressor when the same had no device for cooling the compressed air as it entered the outlet line. We are unable to see under this record where either Canadian River Drilling Company and Well Completions, Inc. or the two in combination had any right of control or operation of said compressor. We again refer to Producers Chemical Company v. McKay, 366 S.W.2d 220 at 226 where it is said:

"Mere directions given to McDonald as to where to hook up, when to start and when to shut down the compressor in coordinating the work of all men and machinery on the project toward the ultimate object of unloading the hole does not raise the issue that right of control of McDonald in the manner of performing his work had been transferred from Producers to Canadian River. The Standard Oil Co. v. Anderson, supra. We hold that the trial court did not err in refusing to submit the issue to the jury."

■ As to appellant's point of error twenty-six complaining of the appellees' examination of the witness as to appellant using Chevrolet rings in the compressor, even if error, we believe it would be harmless error since it could only be considered as evidence helping to establish that oil was leaking from the compressor and going into the outlet line. It is undisputed that the compressor was leaking oil and that the only place that oil could go was into the outlet line. If the admitting of such evidence should be error, but we do not think it was, we cannot say such was reasonably calculated to cause or probably did cause rendition of an improper judgment and such ruling would not be grounds of reversal. Rule 434; Leyendecker v. Harlow, Tex.Civ. App., 189 S.W.2d 706 (Writ Refused WM). Appellant's twenty-sixth point of error is overruled.

We have carefully considered appellant's remaining points of error which generally complain of the admissibility of the evidence concerning Sear's knowledge of the defective compressor; argument of appellees' counsel; excessiveness of the verdict and the admissibility of reading the testimony of Jones as given on the venue hearing. We overrule all of appellant's remaining points of error as we find no reversible error in

any of them. We think the main points of this appeal have already been determined contrary to appellant's contentions as is shown in Producers Chemical Company v. McKay, Tex.Civ.App., 348 S.W.2d 91 and 366 S.W.2d 220.

The judgment of the trial court is affirmed.